BERMAN O'CONNOR & MANN
Suite 503 Bank of Guam Bldg.
111 Chalan Santo Papa
Hagatna, Guam 96932
Telephone: (671) 477-2778

Attorneys for Defendant:
WEN YUEH LU

FILED
DISTRICT COURT OF GUAM
DEC 12 2006
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>WEN YUEH LU,<br><br>　　　　　Defendant. | ~~CRIMINAL~~ CASE NO. 06-00031<br>MAGISTRATE DB<br><br>DECLARATION OF<br>DEFENDANT'S COUNSEL |

## DECLARATION OF DEFENDANT'S COUNSEL

I, DANIEL J. BERMAN, hereby declare under penalty of perjury that:

1. I am counsel for the Defendant Wen Yueh Lu in the above-captioned action.

2. I make this Declaration upon personal knowledge unless otherwise stated.

3. Defendant Wen Yueh Lu is the previous fish master and chief of the Vessel Marshalls 201 that was arrested on September 9, 2006 and became the subject of the collateral pending U.S. District Court for Guam, Civil Action No. CV06-00030. A bond of $2,950,000.00 was posted for the release of the vessel in that civil action. On October 13, 2006, the ship was therefore released; and, the Captain and Fish Master Defendant Wen Yueh Lu herein were also released. No criminal charges were filed at any time after September 9, 2006 until December 8, 2006.

E:\Jean\Plds\DJB\Chen Hsin Yu\dec of counsel.wpd

**ORIGINAL**

===========================================================

4. In civil case CV06-00030, deposition of ex-fishmaster Mr. Lu requested to be taken in Taipei, Taiwan on November 21, 2006. See, Counsel for Defendant Marshall 201, e-mail to Assistant U.S. Attorney M. Schwab, dated November 10, 2006, attached Exhibit "1" to Declaration of Defendant's Counsel filed herewith. Then, the U.S. Attorney's office for Guam objected and stated they could not fly in to a foreign country for a deposition without a time consuming delay to obtain a foreign country clearance from the U.S. Government. See, E-Mail, M. Schwab, Assistant U.S. Attorney, dated November 10, 2006, Exhibit "1".

To cooperate in the assertion of a time-consuming U.S. objection (they could not travel to Taiwan) which was their grounds to delay the deposition in Taiwan, the defendants Mr. Lu and Marshalls 201 volunteered to change the location of the deposition and bring Mr. Lu to Guam. See, E-Mail, Defendant's Attorney D. Berman, dated November 13, 2006. Exhibit "2". Shortly thereafter, the place for the deposition was agreed and never disputed. Defendant Marshalls 201 and Mr. Lu provided their Notice of Deposition, dated November 14, 2006, Exhibit "3".

On November 22, 2006, the U.S. filed its Motion To Quash the Deposition of Mr. Lu scheduled on December 7, 2006, because no scheduling conference had been completed in CV06-00030 (now scheduled January 3, 2007). On November 30, 2006, Order was entered that denied Plaintiff's United States of America Motion to Quash Discovery Prior to Scheduling Order. See, Exhibit "4", Order filed November 30, 2006 attached.

E:\Jean\Plds\DJB\Chen Hsin Yu\dec of counsel.wpd

U.S.A. v. WEN YUEH LU                                                                              PAGE 3
DECLARATION OF DEFENDANTS COUNSEL

===========================================================

5. Based on the above Order, the Civil Case deposition of Wen Yueh Lu proceeded on schedule and was complete on December 7 and 8, 2006 in Guam. The Plaintiff United States of America, through its Office of United States Attorney, Assistant U.S. Attorney Mikel Schwab attended and completed its cross examination of Defendant Wen Yueh Lu in Guam.

6. Upon completion of the deposition testimony of Wen Yueh Lu on December 8, 2006, the new criminal charge of a class B-misdemeanor was filed and served. On December 9, 2006, Defendant was arrested in departure at the airport in Guam because he had disclosed forthrightly on December 8, 2006, his travel arrangements in and out of Guam for the deposition, while testifying in the deposition.

7. Defendant has no history of any prior criminal arrest or conviction in the world. Accordingly, Defendant would present a proper case for probation and a modest fine at sentencing, even if he were found guilty (which Defendant vigorously denies).

8. Upon information and belief, Defendant is willing to post a fine in any reasonable amount for bail up to, but hopefully less than, the maximum of $5,000.00.

9. Defendant has successfully obtained the services of Mr. Hu, Tai Li a proper third party custodian who satisfies and meets the conditions of a third party custodian through the interview process of Pre-Trial Services of this court.

10. On information received from Guam Telephone Authority on December 11, 2006, a dedicated phone line may be installed at the Tumon Capital Hotel for the

room of Defendant Wen Yueh Lu, should such additional condition of release be required.

11. A true and accurate copy of the decision of <u>United States v. Kun Yun Jho</u>, 2006 WL 3488952 (December 4, 2006) is attached as Exhibit "5".

Further Declarant Sayeth Naught.

Dated this __12__ day of December, 2006.

BY: _____
DANIEL J. BERMAN

E:\Jean\Plds\DJB\Chen Hsin Yu\dec of counsel.wpd

## Schwab, Mikel (USAGU)

**From:** Schwab, Mikel (USAGU)
**Sent:** Friday, November 10, 2006 11:52 AM
**To:** 'gatorlaw@kuentos.guam.net'
**Subject:** RE: Marshalls 201   http://foia.state.gov/masterdocs/07fam/07m0940.pdf

Rules on country clearance....   http://foia.state.gov/masterdocs/07fam/07m0940.pdf

-----Original Message-----
From: Dan Berman [mailto:gatorlaw@kuentos.guam.net]
Sent: Friday, November 10, 2006 11:44 AM
To: Schwab, Mikel (USAGU)
Subject: Marshalls 201

Hello Mikel,

I called and now sending e.mail to follow up on the date for deposition of my client's previous Captain, that being Tuesday, November 21, at 9:30 in Taipei.

Flights on China Airlines go and come each day/night, Tuesday, Wednesday, Saturday and Sunday. Leaving Guam at 7 a.m.; returning at near midnight from Taipei, landing in Guam at 5 a.m.

I have a translator in mind and looking for a court reporter. If you have suggestions as to either positions, I am open minded.

Regards, dan

## Schwab, Mikel (USAGU)

**From:** Schwab, Mikel (USAGU)
**Sent:** Friday, November 10, 2006 11:48 AM
**To:** 'gatorlaw@kuentos.guam.net'
**Cc:** 'paul.ortiz@noaa.gov'
**Subject:** RE: Marshalls 201

Dan, I have two problems. The State Department requires country clearance. I can apply for it with two weeks minimum notice. Also, my client wants to participate and will have to coordinate with any plans. I am checking now to see if they are prep'd for a depo. Let me know. Thanks, M

-----Original Message-----
From: Dan Berman [mailto:gatorlaw@kuentos.guam.net]
Sent: Friday, November 10, 2006 11:44 AM
To: Schwab, Mikel (USAGU)
Subject: Marshalls 201

Hello Mikel,

I called and now sending e.mail to follow up on the date for deposition of my client's previous Captain, that being Tuesday, November 21, at 9:30 in Taipei.

Flights on China Airlines go and come each day/night, Tuesday, Wednesday, Saturday and Sunday. Leaving Guam at 7 a.m.; returning at near midnight from Taipei, landing in Guam at 5 a.m.

I have a translator in mind and looking for a court reporter. If you have suggestions as to either positions, I am open minded.

Regards, dan


EXHIBIT

# Dan Berman

**From:** Dan Berman [gatorlaw@kuentos.guam.net]
**Sent:** Monday, November 13, 2006 12:45 PM
**To:** Mikel Schwab (USAGU)
**Subject:** depositions in Marshalls 201 case

Hello Mikel,

How does your schedule look for the deposition of the same Captain, but in Guam at my law office on November 23, 2006 at 9:30 a.m.?

I got your fax and email noting the weeks of delay.

Please let me know at your earliest convenience.  Regards, db

EXHIBIT "2"

# BERMAN O'CONNOR & MANN
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910



Telephone: (671) 477-2778

Facsimile: (671) 477-4366

## FACSIMILE COVER SHEET

DATE: November 13, 2006

TOTAL NUMBER OF PAGES, INCLUDING THIS COVER SHEET: 2

PLEASE DELIVER TO:

NAME: Mikel W. Schwab, Esq.

OFFICE: Office of the United States Attorney

FAX NO.: (671) 472-7215

MESSAGE:

Transmitting e-mail letter dated November 13, 2006.

Regards

THIS DOCUMENT IS FROM:

NAME: J. Rivera / Daniel J. Berman, Esq.

SUBJECT: F/V Marshalls No. 201

CONFIDENTIALITY NOTICE: The documents accompanying this transmission contain confidential information which is legally privileged. The information is intended only for the use of the recipient named above. If you have received this transmission in error, please immediately notify us by telephone, to arrange for the return of the original documents to us, and you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance upon the contents of the information contained in this transmission is strictly prohibited.

FACSIMILE OPERATOR: __Jeannette__      (671) 477-2778

IF ANY OF THE PAGES ARE NOT LEGIBLE, OR YOU DO NOT RECEIVE ALL OF THE PAGES INDICATED ABOVE, PLEASE CONTACT THE "FACSIMILE OPERATOR" IMMEDIATELY.

E:\Jean\FAX.ALL\Schwab.Mikel 100406.wpd

|   |   |   |
|---|---|---|
| 1 | BERMAN O'CONNOR & MANN | |
|   | Suite 503, Bank of Guam Building | |
| 2 | 111 Chalan Santo Papa | |
|   | Hagåtña, Guam 96910 | |
| 3 | Telephone: (671) 477-2778 | |
|   | Facsimile: (671) 477-4366 | |
| 4 | | |
|   | Attorneys for Defendant: | |
| 5 | *MARSHALLS 201* | |

**FILED**
DISTRICT COURT OF GUAM
NOV 14 2006
MARY L.M. MORAN
CLERK OF COURT

## UNITED STATES DISTRICT COURT
## FOR THE TERRITORY OF GUAM

| UNITED STATES OF AMERICA, | ) CIVIL CASE NO. 06-00030 |
|---|---|
| Plaintiff, | ) |
| v. | ) NOTICE OF TAKING DEPOSITION |
| MARSHALLS 201, | ) DATE: THURSDAY, NOVEMBER 23, 2006 |
|   | ) TIME: 9:30 A.M. |
| Defendant. | ) |

### NOTICE OF TAKING DEPOSITION

TO: MIKEL W. SCHWAB, OFFICE OF THE UNITED STATES ATTORNEY, 108 HERNAN CORTES AVENUE, SUITE 500, HAGÅTÑA, GUAM 96910

**PLEASE TAKE NOTICE** that on **NOVEMBER 23, 2006, THURSDAY**, at the hour of **9:30 A.M.** at the Law Office of Berman O'Connor & Mann, Suite 503 Bank of Guam Bldg., 111 Chalan Santo Papa, Hagåtña, Guam 96910, Defendant MARSHALLS 201, through counsel undersigned, in the above-entitled action will take the deposition of MR. WEN YUEH LU, whose address is known to you, upon oral examination pursuant to the prior Order of this Court and Rule 30(a), Federal Rules of Civil Procedure, before a notary public or before some other officer authorized by law to administer oaths. The oral examination will continue from day to day until completed.

E:\Jean\Pld...\Marshalls\ntc. depo.

US Attorney's Office
Districts of Guam & NMI
NOV 14 2006
Time
Receiving name
Date keyed in Dbase
Entered into Dbase

Dated this **14** day of November, 2006.

                              **BERMAN O'CONNOR & MANN**  
                              Attorneys for Defendant *MARSHALLS 201*

            BY: *[signature]*  
                          **DANIEL J. BERMAN**

E:\Jean\Plds\DJB\Marshalls\ntc. depo.wpd

Nov. 30, 2006

# DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MARSHALLS 201,<br><br>Defendant. | Civil Case No. 06-00030<br><br><br><br>ORDER |

Presently before the Court is the Plaintiff's Motion to Quash Discovery Prior to Scheduling Order ("Motion to Quash"). (Docket No. 28.) Because the Defendant has already filed an opposition (Docket No. 33) to said motion, and because the Court believes further oral argument on the matter would not assist it in reaching a determination, the Court hereby denies the Plaintiff's *Ex Parte* Application to Shorten Time for Hearing ("Application to Shorten Time"). (Docket No. 29.) Based on the record before it, the Court issues the following Order denying the Motion to Quash.

## FACTS

On November 14, 2006, the Defendant filed a Notice of Taking Deposition of Mr. Wen Yueh Lu, which was scheduled to occur on November 23, 2006. (Docket No. 22.) In response to the Plaintiff's objection to said deposition taking place on Thanksgiving Day (a federal holiday) and before the Rule 16 scheduling conference, the Defendant filed an Amended Notice of Taking Deposition (Docket No. 25), which purportedly rescheduled the deposition of Mr.

Case 1:06-cv-●●/30    Document 41    Filed 11/30/●●    Page 2 of 5

United States of America v. Marshalls 201, Civil Case No. 06-00030
Order Denying Application to Shorten Time and Motion to Quash Discovery
Page 2 of 5

1  Wen Yueh Lu to November 24, 2006. The Amended Notice made reference to Rule 30(a)(2)(C)
2  of the Federal Rules of Civil Procedure.
3      On November 20, 2006, counsel for the Defendant, Daniel Berman, sent an e-mail to the
4  Plaintiff's counsel, Assistant United States Attorney Mikel Schwab, advising him that due to a
5  change in circumstances, the November 24 deposition of Mr. Wen-Yueh Lu would have to be
6  rescheduled. (Berman Decl., Docket No. 34, at ¶15.) Additionally, Mr. Berman asked Mr.
7  Schwab to contact him "to discuss a mutually agreed date" to reschedule said deposition with a
8  condition that the deposition not be continued for more than two weeks. (Id. and Exhibit 11
9  attached thereto.)
10     When an agreement could not be reached between counsel, the Plaintiff filed the instant
11 Motion to Quash and Application to Shorten Time on November 22, 2006. Later that day, the
12 Defendant filed its opposition to the Motion to Quash and a Second Amended Notice of Taking
13 Deposition which scheduled the deposition of Mr. Wen Yueh Lu for December 7, 2006. (Docket
14 No. 32.)

## ANALYSIS

16     The Plaintiff seeks an Order quashing the Notice of Deposition. The Plaintiff asserts the
17 Defendant should not be able to conduct a deposition without approval from the Court prior to
18 the issuance of a Rule 16 Scheduling Order. The Plaintiff claims that "a time and place for any
19 such deposition [should] be scheduled during the discovery period and with enough notice for
20 the client agencies of the United States to participate meaningfully in the deposition." (Mot.,
21 Docket No. 28, at 2.)
22     The Defendant, on the other hand, asserts that Rule 30(a)(2)(C) of the Federal Rules of
23 Civil Procedure does not require it to seek prior court approval before proceeding forward with
24 the scheduled deposition of Mr. Wen Yueh Lu. Rule 30(a)(2)(C) in pertinent part provides:

> A party must obtain leave of court . . .if, without the written stipulation of the
> parties, . . . a party seeks to take a deposition before the time specified in Rule
> 26(d) *unless the notice contains a certification, with supporting facts, that the
> person to be examined is expected to leave the United States and be unavailable
> for examination in this country unless deposed before that time.*

28 Fed. R. Civ. P. 30(a)(2)(C) (emphasis added).

Case 1:06-cv-●●030 Document 41 Filed 11/30/●●06 Page 3 of 5

United States of America v. Marshalls 201, Civil Case No. 06-00030
Order Denying Application to Shorten Time and Motion to Quash Discovery    Page 3 of 5

The Defendant contends that it has met the procedural requirements of Rule 30(a)(2)(C) because its Second Amended Notice of Taking Deposition contains the following certification and supporting facts:

> Defendant certifies under [Fed. R. Civ. P.] 30(a)(2)(C) that the person for examination; that is Mr. Wen Yueh Lu is a permanent resident and citizen of China. He is expected to only visit and remain in the United States for a period of about two (2) days on and just before December 7, 2006. The witness is expected to then leave the United States permanently. The witness is expected to be unavailable for later trial and deposition examination in the U.S.A. unless deposed. He is expected to be permanently unavailable for trial or later deposition. The witness is now unemployed and is seeking permanent employment on the high seas as a captain of another fishing vessel as soon as possible.

(Docket No. 32 at 2.)

According to one learned treatise, the special notice procedure of Rule 30(a)(2)(C) "was the resolution of a long and troublesome dispute between the admiralty bar and those whose experience is with general civil litigation." 8A WRIGHT, MILLER & MARCUS, *Federal Practice and Procedure* §2105 at 52 (2d ed. 1994). The treatise provides further history on this rule:

> The *de bene esse* statutes have long allowed depositions to be taken if, among other circumstances, the witness was bound on a voyage to sea. It was a common practice in maritime litigation to take depositions immediately upon filing the complaint to avoid the possibility of witnesses sailing away while plaintiff was obtaining leave of court.
>
> This provided to be one of the most difficult points in the unification of admiralty procedure and civil procedure in 1966. The admiralty bar was not willing to abandon its practice of taking depositions immediately and the civil bar was equally unwilling to accept that practice for ordinary litigation. The result was an awkward and unhappy compromise. . . .Rule 26(a), as amended in 1966, provided that in an admiralty or maritime case identified as such depositions might be taken under the *de bene esse* statutes as an alternative to taking them under the Civil Rules, with their requirement for leave of court at the outset of litigation. The Advisory Committee Note to that 1966 amendment stated that a continuing study was being made in an effort to devise a modification of the leave requirement appropriate to both civil and admiralty practice.
>
> The study bore fruit in 1970. Rule 30 was amended to replace the *de bene esse* statutes and provide a formula applicable to ordinary civil as well as martime claims. It allowed plaintiff's attorney to certify to facts showing an urgent need for an immediate deposition. Counsel who so certified in the notice of taking the deposition could proceed immediately to take the deposition without leave of court.
>
> Under the 1970 version, the notice had to state that the person to be examined would be unavailable for examination unless his or her deposition is taken before expiration of the 30-day period. The notice also had to state either that the

Case 1:06-cv-...030   Document 41   Filed 11/30/...6   Page 4 of 5

United States of America v. Marshalls 201, Civil Case No. 06-00030
Order Denying Application to Shorten Time and Motion to Quash Discovery                                    Page 4 of 5

witness was about to go out of the district where the action was pending and more than 100 miles from the place of trial, or about to go out of the United States, or bound on a voyage to sea. The notice had to set forth facts to support the statement that these conditions are met.

The 1993 amendment narrowed this option, and Rule 30(a)(2)(C) now provides that the notice must certify, with supporting facts, "that the person to be examined is expected to leave the United States and be unavailable for examination in the country unless deposed before" the Rule 26(f) conference. . . .

Id. at 52-54 (footnotes omitted).

The Court has reviewed the certification contained in the Second Amended Notice of Taking Deposition and the declaration of Mr. Wen Yueh Lu (Docket No. 36). The deponent is expected to be bound for a voyage to sea as the captain of another fishing vessel. It is expected that the deponent will be unavailable for trial or later deposition in the United States unless deposed before the Rule 26(f) conference. Based on these facts, the Court finds that the Defendant has complied with the requirements of Rule 30(a)(2)(C). Accordingly, it was not necessary for the Defendant to seek and obtain court approval before scheduling the deposition of Mr. Wen Yueh Lu.

The Plaintiff next argues that without the stipulation of both parties, the Local Rules of Practice for the District Court of Guam require the Defendant to apply to the Court for discovery that takes place outside the Scheduling Order.

Local Rule LR 26.2 requires that before any party initiates discovery, said party must submit certain prediscovery disclosures to the opponent. The Defendant claims these prediscovery disclosures were provided to the Plaintiff on November 1, 2006. See Berman Decl. at ¶19 and Exh. 13 thereto. Because the Defendant has satisfied the requirements of both the Federal Rules of Civil Procedure and the Local Rules, the deposition of Mr. Wen Yueh Lu shall proceed as scheduled. The Plaintiff has had 15 days notice of the deposition scheduled for December 7, 2006. Under the circumstances, this is more than sufficient notice for the client agencies of the United States to participate meaningfully in the upcoming deposition.

///

///

///

Case 1:06-cv-●●030   Document 41   Filed 11/30/●●●6   Page 5 of 5

United States of America v. Marshalls 201, Civil Case No. 06-00030
Order Denying Application to Shorten Time and Motion to Quash Discovery                    Page 5 of 5

# CONCLUSION

For the reasons set forth above, the Court hereby DENIES both the Motion to Quash (Docket No. 28) and the Application to Shorten Time (Docket No. 29).

SO ORDERED this 30th day of November 2006.



/s/ **Joaquin V.E. Manibusan, Jr.**
**U.S. Magistrate Judge**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Texas,
Beaumont Division.
UNITED STATES of America
v.
KUN YUN JHO and OVERSEAS SHIPHOLDING GROUP, INC.
No. CR.A.106CR65TH(ALL).

Dec. 4, 2006.

John Malcolm Bales, US Attorney's Office, Lufkin, TX, Joseph Robert Batte, US Attorney's Office, Beaumont, TX, for United States of America.

Kun Yun Jho, Houston, TX, pro se.

Robert Jon Sussman, Hinton Sussman Bailey & Davidson, Houston, TX, Thomas Nave Kiehnhoff, Reaud Morgan & Quinn LLP, Beaumont, TX, for Kun Yun Jho and Overseas Shipholding Group, Inc.

MEMORANDUM OPINION AND ORDER ADOPTING REPORTS AND RECOMMENDATIONS AS MODIFIED HEREIN AND PARTIALLY GRANTING DEFENDANTS' MOTIONS TO DISMISS

HEARTFIELD.

*1 Before the Court is a *Report and Recommendation on Defendant Jho's Motions to Dismiss* [Clerk's Docket No. 108] and a *Report and Recommendation on Defendant Overseas Shipholding Group, Inc.'s Motion to Dismiss* [Clerk's Docket No. 109], both of which were filed on November 13, 2006. Defendants filed objections [Clerk's Docket Nos. 100, 117] to the reports and recommendations, to which the government did not respond. The Court heard argument on the objections on two separate occasions. Having considered the foregoing, the Court enters this memorandum opinion and order adopting the reports and recommendations as modified herein and partially granting defendants' motions to dismiss [Clerk's Docket Nos. 18, 59 and 63].

I. MODIFICATIONS

The reports and recommendations are modified so as to grant defendants' motions to dismiss Counts 3 through 10 criminally charging defendants with violations of 33 C.F.R. § 151.25 and that portion of Count 1 alleging that defendants conspired to violate 33 C.F.R. § 151.25. *See Second Superceding Indictment* [Clerk's Docket No. 46].

In Counts 3-10, the government charges that:
> [Jho and OSG] did knowingly fail to maintain an Oil Record Book for the *Pacific Ruby* in which all disposals of oil residue and discharges overboard and disposals otherwise of oily mixtures, slops from bilges and bilge water that accumulated in machinery spaces were fully recorded. Specifically, on each date Defendant Jho failed to maintain an accurate Oil Record Book, by failing to disclose exceptional discharges in which overboard discharges of oily mixtures, slops from bilges and bilge water that accumulated in machinery spaces had been made without the use of properly functioning Oil Water Separator and Oil Content Meter and falsely indicating the proper use of required pollution prevention equipment....

*Second Superceding Indictment* at ¶ 22 [Clerk's Docket No. 46]. In Count 1, the government charges that defendants violated 18 U.S.C. § 371 when they allegedly conspired:
> To knowingly fail to maintain an Oil Record Book for the *Pacific Ruby* in which did [*sic*] knowingly fail to maintain an Oil Record Book for the *Pacific Ruby* in which all disposals of oil residue and discharges overboard and disposals otherwise of oily mixtures, slops from bilges and bilge water that accumulated in machinery spaces were fully recorded, in violation of Title 33 United States Code, section 1908(a) and Title 33, Code of Federal Regulation, sections 151.25(a) and 151.25(h).

The charges alleged in Counts 3 through 10 of the *Second Superceding Indictment* are brought pursuant to the enforcement provision of the ACT TO PREVENT POLLUTION FROM SHIPS (APPS), codified at 33 U.S.C. § 1901 *et seq.* APPS in the federal law implementing two related international treaties [FN1] regulating pollution discharges from ships to which the United States is a signatory nation. *See United States v. Abrogar,* 459 F.3d 430, 431-32 (3d Cir.2006).

*2 APPS authorizes the U.S. Coast Guard to issue regulations implementing procedures, standards and rules commensurate with the MARPOL Protocol. 33 U.S.C. § 1903; 33 C.F.R. § 151.01 *et seq.* The substantive regulation defendants are charged with

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

violating essentially incorporates MARPOL's oil record book requirements into federal law. 33 C.F.R. § 151.25. *See Second Superceding Indictment* at ¶ 22 [Clerk's Docket No. 46]. Entitled "Oil Record Book", this regulation requires that:

> (a) EACH OIL TANKER OF 150 GROSS TONS AND ABOVE, SHIP OF 400 GROSS TONS AND ABOVE OTHER THAN AN OIL TANKER, AND MANNED FIXED OR FLOATING DRILLING RIG OR OTHER PLATFORM SHALL MAINTAIN AN OIL RECORD BOOK PART I (MACHINERY SPACE OPERATIONS). AN OIL TANKER OF 150 GROSS TONS AND ABOVE OR A NON OIL TANKER THAT CARRIES 200 CUBIC METERS OR MORE OF OIL IN BULK, SHALL ALSO MAINTAIN AN OIL RECORD BOOK PART II (CARGO/BALLAST OPERATIONS).
>
> * * *
>
> (d) ENTRIES SHALL BE MADE IN THE OIL RECORD BOOK ON EACH OCCASION, ON A TANK TO TANK BASIS IF APPROPRIATE, WHENEVER ANY OF THE FOLLOWING MACHINERY SPACE OPERATIONS TAKE PLACE ON ANY SHIP TO WHICH THIS SECTION APPLIES--
> (1) BALLASTING OR CLEANING OF FUEL OIL TANKS;
> (2) DISCHARGE OF BALLAST CONTAINING AN OILY MIXTURE OR CLEANING WATER FROM FUEL OIL TANKS;
> (3) DISPOSAL OF OIL RESIDUE; AND
> (4) DISCHARGE OVERBOARD OR DISPOSAL OTHERWISE OF BILGE WATER THAT HAS ACCUMULATED IN MACHINERY SPACES.
>
> * * *
>
> (h) EACH OPERATION DESCRIBED IN [PARAGRAPHS (D) ]OF THIS SECTION SHALL BE FULLY RECORDED WITHOUT DELAY IN THE OIL RECORD BOOK SO THAT ALL THE ENTRIES IN THE BOOK APPROPRIATE TO THAT OPERATION ARE COMPLETED. EACH COMPLETED OPERATION SHALL BE SIGNED BY THE PERSON OR PERSONS IN CHARGE OF THE OPERATIONS CONCERNED AND EACH COMPLETED PAGE SHALL BE SIGNED BY THE MASTER OR OTHER PERSON HAVING CHARGE OF THE SHIP.
>
> * * *
>
> (j) THE MASTER OR OTHER PERSON HAVING CHARGE OF A SHIP REQUIRED TO KEEP AN OIL RECORD BOOK SHALL BE RESPONSIBLE FOR THE MAINTENANCE OF SUCH RECORD. [FN2]

33 C.F.R. § 151.25.

Violation of the MARPOL Protocol, APPS, or the Coast Guard regulations issued thereunder is made unlawful by APPS. 33 U.S.C. § 1907(a). While it is true that the enforcement provision found in APPS contemplates both criminal and civil penalties, the scope of enforcement practices is not as broad as that provision reads on its face. 33 U.S.C. § 1908. This is because section 1908 must be read in light of section 1912, which provides that "any action taken under [Chapter 33] shall be taken in accordance with international law." 33 U.S.C. § 1912. In this way, the civil and criminal enforcement scheme created by APPS integrates and is circumscribed by principles of customary international law.

The UNITED NATIONS **CONVENTION** ON THE LAW OF THE SEA (UNCLOS) is a codification of customary international law negotiated under the auspices of a United Nations conference. THIRD UNITED NATIONS CONFERENCE ON THE LAW OF THE SEA, 21 I.L.M. 1245 (1982); *Sarei v. Rio Tinto,* 456 F.3d 1069 (9th Cir.2006) (*citing United States v. Alaska,* 503 U.S. 569, 588 n. 10, 112 S.Ct. 1606, 118 L.Ed.2d 222 ("The United States ... has recognized that [the UNCLOS's] baseline provisions reflect customary international law"); *see also* LORI F. DAMROSCH ET AL., *International Law: Cases and Materials* (4th ed.2001)(most provisions of the UNCLOS "are clearly established customary law of the sea").

*3 Although UNCLOS has been signed by the President and forwarded to the Senate, it has not yet been ratified. It is nevertheless appropriate for this Court to consider UNCLOS jurisdictional provisions as they relate to the prosecutions at bar. *Lauritzen v. Larsen,* 345 U.S. 571, 582, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) (courts generally defer to international maritime laws of "impressive maturity and universality"); *see also United States v. Royal Caribbean Cruises,* 24 F.Supp.2d 155, 159 (D.C.P.R.1997). "The submission of the treaty to the Senate expresses to the international community the United States' ultimate intention to be bound by the pact." *Id.* Pending a treaty's ratification by the Senate, "the United States is bound to uphold the purpose and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

principles of the agreement." *Id.* Conversely, "a state that has signed the agreement or expressed its consent to be bound is obliged to refrain from acts that would defeat the object and purpose of the agreement." RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 312(3).

UNCLOS contains very specific and authoritative rules regarding jurisdiction to enforce marine pollution. UNCLOS specifically confers jurisdiction over marine pollution in article 216, which provides:

> LAWS AND REGULATIONS ADOPTED IN ACCORDANCE WITH THIS **CONVENTION** AND APPLICABLE INTERNATIONAL RULES AND STANDARDS ESTABLISHED THROUGH COMPETENT INTERNATIONAL ORGANIZATIONS OR DIPLOMATIC CONFERENCE FOR THE PREVENTION, REDUCTION AND CONTROL OF POLLUTION OF THE MARINE ENVIRONMENT BY DUMPING SHALL BE ENFORCED:
> (a) BY THE COASTAL STATE WITH REGARD TO DUMPING WITHIN ITS TERRITORIAL SEA OR ITS EXCLUSIVE ECONOMIC ZONE OR ONTO ITS CONTINENTAL SHELF;
> (b) BY THE FLAG STATE WITH REGARD TO VESSELS FLYING ITS FLAG OR VESSELS OR AIRCRAFT OF ITS REGISTRY
> ....

THIRD UNITED NATIONS CONFERENCE ON THE **LAW** OF THE **SEA**, 21 I.L.M. 1245, 1311 (1982). This provision is a codification of the long-standing international maritime rule known as "the law of the flag." Under this jurisdictional principle, a ship is considered part of the territory of the sovereignty whose flag it flies, and the ship does not lose that character when in the territorial limits of another sovereignty. *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). The flag state is responsible for ensuring that vessels flying its flag comply with international rules. For this reason, the flag state has primary responsibility for the enforcement of marine pollution laws.

The law of the flag principle recognizes the right of non-flag states to seek redress for marine pollution in limited circumstances. Under UNCLOS, the coastal state has jurisdiction to enforce international pollution rules when the foreign vessel dumps pollution within the coastal state's territorial sea, exclusive economic zone or continental shelf. THIRD UNITED NATIONS CONFERENCE ON THE LAW OF THE SEA ART. 16, 21 I.L.M. 1245, 1311 (1982). Morever, the international scheme established by UNCLOS contemplates the levying of civil fines by non-flag states. Regarding penalties for violations of marine pollution laws, article 230(2) of UNCLOS provides as follows:

> *4 *MONETARY PENALTIES ONLY* MAY BE IMPOSED WITH RESPECT TO VIOLATIONS OF NATIONAL LAWS AND REGULATIONS OR APPLICABLE INTERNATIONAL RULES AND STANDARDS FOR THE PREVENTION, REDUCTION AND CONTROL OF POLLUTION OF THE MARINE ENVIRONMENT, COMMITTED BY FOREIGN VESSELS IN THE TERRITORIAL SEA, *EXCEPT IN THE CASE OF A WILFUL AND SERIOUS ACT OF POLLUTION IN THE TERRITORIAL SEA.*

THIRD UNITED NATIONS CONFERENCE ON THE LAW OF THE SEA, 21 I.L.M. 1245, 1315 (1982)(emphasis added).

The Court is of the opinion that long-standing principles of international law made specifically applicable to APPS by section 1912 require dismissal of the criminal charges alleging violation of the Coast Guard regulations. Here, the United States government is seeking to criminally prosecute a foreign flag ship for alleged violations of U.S. Coast Guard regulations that occurred aboard ship and outside U.S. waters. 33 C.F.R. § 151.25. Because the government has not charged defendants with an act of pollution in U.S. waters, the government may only pursue civil penalties for violations of Coast Guard regulations by foreign-flag ship personnel that occurred aboard the *Pacific Ruby.* UNCLOS art. 230(2). Maintenance of a criminal prosecution on these facts runs afoul of well-established law of the flag principles which seek to ensure uniformity, comity and reciprocity among sea-faring nations. It is for this reason that Counts 3 through 10 alleging violation of 33 C.F.R. § 151.25 and the portion of Count 1 alleging that defendants conspired to violate 33 C.F.R. § 151.25 must be dismissed.

## II. ORDER

IT IS THEREFORE ORDERED that the *Report and Recommendation on Defendant Jho's Motions to Dismiss* [Clerk's Docket No. 108] and the *Report and Recommendation on Defendant Overseas Shipholding Group, Inc.'s Motion to Dismiss* [Clerk's Docket No. 109] are hereby ADOPTED AS MODIFIED HEREIN.

IT IS FURTHER ORDERED that the defendants' motions to dismiss [Clerk's Docket Nos. 18, 59 and 63] are hereby GRANTED to the extent they seek dismissal of Counts 3 through 10 alleging violation of 33 C.F.R. § 151.25 and the portion of Count 1 alleging that defendants conspired to violate 33 C.F.R. § 151.25. *See Second Superceding Indictment* [Clerk's Docket No. 46].

SO ORDERED.

REPORT AND RECOMMENDATION ON DEFENDANT JHO'S MOTIONS TO DISMISS

Pursuant to 28 U.S.C. § 636(b) and the Local Rules for the United States District Court for the Eastern District of Texas, the District Court referred this criminal matter to the undersigned United States Magistrate for hearing and submission of findings of fact and a report and recommendation on certain case-dispositive motions. *See Order of Referral* [Clerk's doc. # 70]. Pending before the Court for purposes of this report are *Defendant Jho's Motion to Dismiss* [Clerk's doc. # 18] and *Supplemental Motion to Dismiss* [Clerk's doc. # 63].

Background [FN1]

Defendant Kun Yun Jho (hereinafter referred to as "Jho") was employed as the Chief Engineer of the *M/T Pacific Ruby*. The *M/T Pacific Ruby* is an ocean-going petroleum oil tanker owned and operated by Overseas Shipholding Group, Inc. (OSG), which is a New York corporation. The *Pacific Ruby* is registered in the Marshall Islands.

*5 As Chief Engineer, Jho has the overall responsibility for the operations in the engine room of the *Pacific Ruby*, including the responsibility for operating the vessel's anti-pollution equipment and entering information concerning that equipment into a log book (Oil Record Book) which is regularly inspected by the United States Coast Guard. Engine room operations in large marine vessels such as the *Pacific Ruby* generate large quantities of oil-contaminated bilge waste when oil drips from the engine's fuel and lubrication systems and mixes with water in the bottom of the vessel. These "oily mixtures" are also referred to as "bilge slops" or "slops from bilges". The oily mixtures are collected and processed through an Oily Water Separator whereby the water is separated from the oil and other wastes. The mixture is then passed through an oil-sensing device known as an Oil Content Meter. If the Oil Content Meter determines that the oil content of the effluent exceeds fifteen parts per million (15 ppm), alarms sound, and the effluent is automatically directed to a storage tank on the vessel. If the Oil Content Meter determines that the oil content in the effluent is 15 ppm or less, the effluent is discharged overboard.

Apparently, the Oil Content Meter can be "tricked" into erroneously "believing" that the effluent contains 15 ppm or less oil by flushing it with fresh water to skew the oil content reading. Also, the system can apparently be "tricked" by inserting tools or other objects into valves or other pieces of equipment to cause an oily mixture containing oil of 15 ppm or more to be discharged overboard rather than be properly directed to the appropriate storage tank. In response to this, some vessels have "anti-tricking" devices installed to thwart "tricking" of the anti-pollution equipment.

a). *Charges Pending Against Jho Under the Second Superseding Indictment*

A federal grand jury returned a Second Superseding Indictment [Clerk's doc. # 46] against Jho and OSG on August 16, 2006. Count 1 of the Second Superseding Indictment charges that OSG and its employee and co-defendant Jho conspired to: (1) make false and use false writings in a matter within the jurisdiction of the U.S. Coast Guard and the Department of Homeland Security; (2) fail to maintain an Oil Record Book for the *Pacific Ruby*; and (3) alter, conceal, cover up, falsify, or make a false entry in a record or document with the intent to impede, obstruct, or influence the investigation and proper administration of a matter within the jurisdiction of the U.S. Coast Guard and Department of Homeland Security, all in violation of Title 18, United States Code, Section 371.

The "manner and means" portion of the Second Superseding Indictment sets forth allegations of how Jho, OSG, and others intended to effectuate the conspiracy and further its objectives. The Second Superseding Indictment alleged that the defendants routinely discharged oily mixtures into the ocean with equipment and procedures that prevented the Oil Content Meter from operating as it was designed. It alleges that the defendants taught other individuals to "trick" the Oil Content Meter by flushing it with fresh water to prevent it from sensing an actual sample of the overboard discharge. Jho allegedly taught other members of the conspiracy how to defeat newly installed anti-tricking equipment which would have prevented the use of fresh water to trick the Oil

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Content Meter. Finally, Jho and OSG also allegedly maintained a false and misleading Oil Record Book and made and caused to be made materially false statements to members of the United States Coast Guard while the *Pacific Ruby* was in port.

*6 The Second Superseding Indictment also sets forth overt acts of the defendants which furthered the conspiracy. The Government alleges that Jho and OSG maintained a false and misleading Oil Record Book on sixteen (16) different occasions while at ports in the Eastern District of Texas. They allege that Jho directed individuals to search for objects to defeat the anti-tricking devices and directed a subordinate to flush the Oil Content Meter with fresh water while creating a record which concealed the tampering. The Government contends that OSG continued to operate the *Pacific Ruby* in United States ports without procedures and precautions to confirm the proper operation of the anti-tricking equipment after learning that the logging device was not properly recording dates. Finally, it is alleged that, on two occasions, Jho and OSG caused the presentation of a false Oil Record Book to members of the United States Coast Guard which failed to record the discharges of oily mixtures.

Count 2 of the Second Superseding Indictment charges Jho and OSG with making false statements in violation of Title 18, United States Code, Sections 1001(a)(3) and 2. It alleges that Jho made and used a false and fictitious Oil Record Book that stated that a discharge had been made on September 11, 2005 "with 15 ppm equipped" which created the false impression, through false and misleading entries and omissions, that the vessel was operating properly when Jho knew that the Oil Content Meter was being flushed with fresh water and not sensing a true sample.

Counts 3 through 10 charge Jho and OSG with knowingly failing to maintain an Oil Record Book, by failing to disclose exceptional discharges in which oily mixtures, slops from bilges and bilge water that accumulated in machinery spaces had been made without the use of a properly functioning Oil Water Separator and Oil Content Meter and falsely indicating the proper use of required pollution prevention equipment on eight (8) different occasions, all in violation of Title 33, United States Code, Section 1908(a), Title 33 C.F.R., Section 151.25, and Title 18, United States Code, Section 2.

b.) *Applicable Laws and Treaties*

Before the Court are two key instruments setting forth the international legal and regulatory regime addressing the issues of marine pollution on the high seas. The first is the United Nations Convention on the Law of the Sea, 1982 (UNCLOS). The second includes the 1973 International Convention for the Prevention of Pollution from Ships and the Protocol of 1978 Relating to the International Convention for the Prevention of Pollution from Ships, collectively known as "MARPOL." *United States v. Abrogar*, 459 F.3d 430, 431-32 (3d Cir.2006); *see also* Shaun Gehan, Case Note, *United States v. Royal Caribbean Cruises, Ltd.: Use of Federal 'False Statements Act' to Extend Jurisdiction Over Polluting Incidents into Territorial Seas of Foreign States*, OCEAN & COASTAL L.J. 167, 169 (2002). UNCLOS has more the status of a "constitution of the oceans," whereas MARPOL sets out a detailed regulatory framework, specifically enforceable amongst the signatory states. Gehan, at 169. These treaties are not self-executing, but rather must be implemented by member states through legislation. *Id.* In the United States, Congress codified the provisions of MARPOL through the Act to Prevent Pollution from Ships (APPS), 33 U.S.C. § § 1901, *et seq.* APPS make it a crime for any person to knowingly violate the MARPOL Protocol, APPS, or regulations promulgated under APPS. *See* 33 U.S.C. § 1908(a).

*7 Regulations for the prevention of pollution by oil from ships are set forth in Annex I to MARPOL. APPS also authorizes the Coast Guard to issue regulations implementing the requirements of these treaties. 33 U.S.C. §§ 1903, 1907. The Coast Guard utilized this authority in issuing detailed regulations. *See* 33 C.F.R. §§ 151.01, *et. seq.* Annex I sets out the standards for the maximum amount of oil permitted to be discharged from ships. *See United States v. Abrogar*, 459 F.3d 430, 431 (3rd Cir.2006). MARPOL also requires that ships have and maintain equipment to collect and measure the oil content of various waste and bilge discharges from ships and divert discharges which contain too much oil into storage tanks rather than discharging the liquid into the ocean. *Id.*

Vessels over a certain size (such as the *Pacific Ruby*) must maintain an Oil Record Book. 33 C.F.R. § 151.25(a). The Oil Record Book must contain entries which relate to the (1) transfer of oil; (2) management and disposal of oily wastes generated on board the vessel, including any discharges of dirty ballast or cleaning water from fuel oil tanks; and (3) the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

disposal of oily residue such as sludge, as well as discharges of bilge waste that has accumulated in machinery spaces. MARPOL Annex I, Reg. 20(1); *Abrogar*, 459 F.3d at 432. The Oil Record Book must also contain a record of emergency, accidental, or other exceptional discharges and the circumstances or reasons therefore. 33 C.F.R. 151.25(g). Certain entries in the Oil Record Book must be signed by the person in charge of the operation. 33 C.F.R. 151.25(h). Finally, under Title 33, United States Code, Section 1908(a), a person who knowingly violates the MARPOL Protocol, that chapter, or the regulations issued thereunder, commits a class D felony.

Arguments Relating to The United Nations'
Convention on the Law of the Sea
(UNCLOS)

Jho initially argues that the United Nations' Convention on the Law of the Sea (UNCLOS) provides that a seaman cannot be prosecuted criminally in the United States for activities occurring on the ship except in the case of a willful and serious act of pollution in the territorial sea, citing Article 230.2 of UNCLOS. Jho contends that there is no allegation nor evidence that he committed a willful and serious act of pollution. Jho argues that the Government's use of the Oil Record Book as a basis for the criminal charges are a device to circumvent the treaty in that the alleged discharges are the crux of the case and the alleged discharges are not "willful and serious acts of pollution" as to subject Jho to incarceration.

The Government answers that the United States is not a party to UNCLOS. The Government further argues that even if the United States were a party to UNCLOS, Article 230 does not constrain or limit a prosecution for crimes committed in port. [FN2] Finally, the Government contends that Jho lacks standing to assert protection from UNCLOS.

*8 Section 7 of part XII of the Law of the Sea Convention states:
> Monetary penalties only may be imposed with respect to violations of national laws and regulations or applicable international rules and standards for the prevention, reduction and control of pollution of the marine environment, committed by foreign vessels in territorial sea, except in the case of a willful and serious act of pollution in the territorial sea.

*Law of the Sea Convention*, Article 230.2. In resolving these issues, this Court looks to the analysis and reasoning set forth by the district courts in *United States v. Royal Caribbean Cruises, Ltd.*, 24 F.Supp.2d 155 (D.P.R.1997) and *United States v. Royal Caribbean Cruises, Ltd.*, 11 F.Supp.2d 1358 (S.D.Fla.1998).

On October 25, 1994, the United States Coast Guard personnel observed the cruise ship *Sovereign of the Seas* discharging pollutants into the U.S. territorial sea off the coast of Puerto Rico. [FN3] *United States v. Royal Caribbean Cruises, Ltd.*, 24 F.Supp.2d 155, 158 (D.P.R.1997). When the ship reached port in San Juan, the Coast Guard boarded the vessel and examined the ship's Oil Record Book. *Id.* At the conclusion of the resulting investigation, a federal grand jury returned a ten count indictment against Royal Caribbean Cruises, Ltd. (RCCL) and two members of the ship's crew. [FN4] *Id.* RCCL moved to dismiss counts one through six. RCCL maintained, and the district court agreed, that counts one through six, for the purposes of determining jurisdiction, rely on a single discharge of oil from the cruise ship in territorial waters. *Id.* at 159. RCCL, like Jho in this case, made the argument that the United Nations Law of the Sea Convention of 1982 (UNCLOS) applied and the Government was limited to the imposition of monetary penalties for violations of its pollution control laws involving non-serious discharges of pollutants within the territorial sea of the United States. *Id.* The district court noted that although the treaty was currently pending ratification by the Senate, it nevertheless carried the weight of law from the date of its submission by the President to the Senate. *Id.* (Citing Article 19 of the Vienna Convention on the Law of Treaties).

Finding UNCLOS to be applicable and finding no serious act of pollution, the district court held that RCCL and the crew members could only be subjected to monetary penalties within the jurisdiction of the United States pursuant to Article 230.2. *Id.* at 160. However, the court denied RCCL's motion to dismiss, holding that the limitation of monetary penalties does not bar the United States from pursuing Counts One through Six. The district court held that "[a]lthough the Government may be estopped from seeking non-monetary penalties, such as imprisonment, the pursuit of monetary penalties in no way contravenes international law." *Id.*

RCCL once again tested the applicability of UNCLOS, this time in a federal district court in Miami. *See United States v. Royal Caribbean*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.