*Cruises, Ltd.,* 11 F.Supp.2d 1358 (S.D.Fla.1998). The facts of the Miami case were also fairly straightforward. On February 1, 1993, Coast Guard officials observed RCCL's cruise ship, the *Nordic Empress,* discharging oil from the ship in Bahamian waters. *Id.* at 1361. Coast Guard officials reviewed the ship's Oil Record Book when the ship reached Miami and noticed that there was no entry indicating that discharge. *Id.* RCCL was subsequently indicted for making a false statement "in the port of Miami, within the Southern District of Florida" in violation of 18 U.S.C. § 1001. [FN5] *Id.* at 1362. RCCL once again invoked the provisions of UNCLOS and urged the district court to apply them for three reasons. [FN6]

*9 First, RCCL urged the district court to follow the opinion in the Puerto Rico RCCL case and hold that UNCLOS should be considered as binding on the United States from the date of its submission by the President to the Senate on September 23, 1994. *Id.* at 1368. Secondly, RCCL argued that customary law principles, which can be binding as a component of domestic law, required the district court to consider UNCLOS as setting forth binding principles of international law. *Id.* And third, RCCL argued that the principle of customary law in connection with the Law of the Sea Convention, which binds the United States by Article 18 of the Vienna Convention on the Law of Treaties, provides that a country which has expressed its consent to be bound by an international treaty, including one not yet entered into, shall not engage in any acts which would defeat the object and purposes of the agreement. *Id.*

The Miami RCCL court first addressed whether UNCLOS should be accorded the weight of law. *Id.* at 1370. The district court held that it was "not convinced that UNCLOS, a treaty which all parties agree applies to protect navigational freedoms and the law of the sea, has any bearing on this domestic prosecution. The alleged crime occurred in port in Miami, Florida and involved the presentation of a materially false writing to the United States Coast Guard." *Id.* The district court noted that the fact that international issues are implicated is not enough to divest the United States of jurisdiction and that the presentation of a false Oil Record Book seemed more appropriately characterized as a domestic law violation over which the United States properly has jurisdiction. *Id.* at 1371. The court further recognized that the gravamen of the action was not the pollution and not the Oil Record Book violation occurring at that time, but the misrepresentation made while in port. *Id.* As a result, the district court found that the proceeding was not properly characterized as "in respect to a pollution incident" so that UNCLOS, a **convention** addressing the **law** of the **sea** was applicable. *Id.*

The Miami court continued in its analysis, and assumed, *agruendo,* that UNCLOS may be raised as a potential issue. *Id.* Rejecting RCCL's argument that collateral estoppel mandated that the district court consider UNCLOS as binding on the United States, the court noted that the Puerto Rico RCCL court was asked to determine the weight of law to give UNCLOS under the circumstances of *that* case. *Id.* at 1372 (emphasis added).

The Miami court then acknowledged that it did appear that UNCLOS is properly considered customary international law. *Id.* The district court found no authority for the proposition that customary international law is properly self-executing so as to afford RCCL standing to litigate its rights under UNCLOS. *Id.* However, the district court did not need to decide if UNCLOS was self-executing because it found no specific right of private action in UNCLOS that would provide an individual litigant redress under UNCLOS. *Id.* at 1373. Since there was no private right of action, RCCL did not have standing to litigate its rights under UNCLOS. *Id.* Accordingly, the Court denied RCCL's motion to dismiss on that ground. *Id.*

*10 This Court finds Judge Middlebrooks' reasoning and analysis in the Miami case to be very persuasive. The crimes alleged here in the Second Superseding Indictment concern crimes which occurred, in part, in the Eastern District of Texas. Jho is not charged with committing discharge violations in the territorial sea. In this case, UNCLOS does not divest the Court of jurisdiction and is not applicable.

Although UNCLOS was signed by the United States in 1994 and sent to the United States Senate, it has not been ratified by the Senate and does not have the force of law. *United States v. Best,* 304 F.3d 308, 315 (3rd Cir.2002). In any event, even if the United States were a party to UNCLOS, as discussed *supra,* Jho has no standing to assert rights under the treaty. Treaty rights accrue to sovereign nations, not to private persons such as Jho. Treaties are contracts between or among independent nations and, as such, do not create rights that are privately enforceable. *United States v. Jimenez-Nava,* 243 F.3d 192, 195 (5th Cir.2001), *cert. denied* 533 U.S. 962, 121 S.Ct. 2620,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

150 L.Ed.2d 773 (2001). This Court agrees with the Miami RCCL court that it does appear that UNCLOS is properly considered customary international law. *See also Mayaguezanos por la Salud Y El Ambiente v. United States*, 198 F.3d 297, 304 n. 14 (1st Cir.1999). Even so, this Court also finds that Jho still does not have standing. A violation of international common law does not affect the Court's jurisdiction. *See United States v. Williams*, 617 F.2d 1063, 1090 (5th Cir.1980). In addition, there is no specific right of private action in UNCLOS which would provide Jho redress. *See Royal Caribbean Cruises, Ltd.* (Miami RCCL), 11 F.Supp.2d at 1373.

Finally, on its face, UNCLOS Article 230.2 *does not* provide that a seaman on a foreign flagged vessel cannot be prosecuted by the United States government for violations of pollution laws in the territorial sea. It clearly states that, if UNCLOS does apply, only monetary penalties may be imposed. Therefore, even if Article 230.2 applies in this case, it does not require dismissal of the Second Superseding Indictment.

Fair Notice

According to Jho's motion, the Government alleges in each count of the Second Superseding Indictment that he had a duty to record an entry into the Oil Record Book anytime he knew that the oil pollution equipment on the *Pacific Ruby* was not operating properly. Jho asserts that MARPOL regulations do not require him to make such entries. Further, he also notes that a violation of 18 U.S.C. § 1519 (obstruction of justice) was an object of the conspiracy. Jho contends that there is no allegation that the Coast Guard inspection had proceeded to a formal investigation or that he knew that an investigation had commenced. He therefore concludes that the statutes and regulations advanced by the Government do not give fair warning that the conduct alleged in the Second Superseding Indictment is prohibited.

*11 A criminal statute is void for vagueness under the Due Process Clause of the Constitution when it fails to provide a person of ordinary intelligence fair notice of the conduct it proscribes. *See United States v. Harris*, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954). "The void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolander v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). It is appropriate to consider an individual's specialized knowledge or experience when considering fair notice. In addition, the requirement that statutes give fair notice cannot be used as a shield by someone who is already intent on wrongdoing. *United States v. Tansley*, 986 F.2d 880, 885 (5th Cir.1993); *see also United States v. Brewer*, 835 F.2d 550, 553 (5th Cir.1987)(defendant should have known that hacking out long distance access codes to obtain free long distance service was wrong).

a). *Fair notice--conspiracy to make false statements under 18 U.S.C. § 1001*

Count 1 of the Second Superseding Indictment alleges, in part that Defendants conspired with others to "violate the laws of the United States as set forth below:
> *False Statements:* To knowingly and willfully make false statements and use false writings in a matter within the jurisdiction of the U.S. Coast Guard and Department of Homeland Security, knowing the same to contain materially false, fictitious, and fraudulent entries, namely a false Oil Record Book for the *Pacific Ruby* that contained materially false statements and from which other material information was omitted, for the purpose of concealing overboard discharges of bilge waste made while tricking required oil pollution prevention equipment and creating the overall impression that the vessel was being operated properly and was properly maintaining the Oil Record Book, in violation of Title 18, United States Code, section 1001(a)(3);"

Jho asserts that he was not sufficiently on notice that his conduct was unlawful. He contends that regulations do not require an entry to be made in the Oil Record Book regarding whether the use of equipment was "proper". Jho complains that the Indictment does not allege that: the entries failed to include the information required by MARPOL; the discharges did not go through the pollution control equipment; any discharge exceeded the regulatory limit; his conduct violated a regulation prohibiting tampering with equipment; or that he was responsible for maintenance of the Oil Record Book.

This Court agrees with the Government that the doctrines of fair notice, rule of lenity or void for vagueness do not apply to Title 18, United States Code, Section 1001. *See Royal Caribbean, Ltd.* (Miami RCCL), 11 F.Supp.2d at 1366. In no

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

uncertain terms, APPS states that a person who knowingly violates the statute, the MARPOL Protocol (including Annexes I, II, and V of MARPOL) or a regulation issued thereunder commits a class D felony. 33 U.S.C. § 1908(a). Annex I, Regulation 9 states that the discharge of oily mixtures are prohibited unless made with a properly functioning oil discharge monitoring and control system. 33 C.F.R. § 151.25 provides that entries shall be made regarding disposal of bilge water that has accumulated in machinery spaces. MARPOL also provides that an entry should be made in the Oil Record Book when the control system fails which includes a reason for failure. MARPOL, Annex I, Appendix III(F). If the system is being bypassed, or "tricked", it has obviously failed, and the regulations require that the appropriate notation be made in the Oil Record Book. The Government alleges that Jho affirmatively indicated in the Oil Record Book that the discharges were made through the 15 ppm equipment when they were not because the system was "tricked". This Court concludes that the statutes and regulations are clear. Jho is allegedly the individual who maintained overall responsibility for the operation of the engine department, the Oil Water Separator, and other pollution control equipment. *See Second Superseding Indictment,* ¶ 4. The statute and the accompanying regulations give an individual such as Jho fair notice that such activities (tricking the pollution control equipment and failing to make appropriate notations in the Oil Record Book) are prohibited by law.

b). *Fair Notice: 33 U.S.C. § 1908(a) and 33 C.F.R. §§ 151.25(a) and (h)*

*12 Count 1 of the Second Superseding Indictment alleges, in part, that Defendants conspired with others to "violate the laws of the United States as set forth below:

> B. *Failure to Maintain Oil Record Book:* To knowingly fail to maintain an Oil Record Book for the *Pacific Ruby* in which did knowingly fail to maintain an Oil Record Book for the *Pacific Ruby* in which all disposals of oil residue and discharges overboard and disposals otherwise of oily mixtures, slops from bilges and bilge water that accumulated in machinery spaces were fully recorded, in violation of Title 33, United States Code, Section 1908(a) and Title 33, Code of Federal Regulations, sections 151.25(a) and 151.25(h)".

As stated above, it appears that the statutes and corresponding regulations unequivocally require the recording of the discharges of oily mixtures and that a notation be made when there is a system failure or exceptional discharge. The language set forth above in the Second Superseding Indictment gives sufficient notice of the charge.

Jho contends that the charging instrument does not allege that he was the Master or otherwise the person in charge of the *Pacific Ruby* so as to be responsible for the "maintenance" of the Oil Record Book under 33 U.S.C. § 151.25(j). Under 33 C.F.R. § 151.25, "maintenance" of the Oil Record Book is the responsibility of the Master or person in charge of the ship. The Government argues that the plain language of the statutes indicate that the person in charge of the engine room operation (Jho) had the duty to make the appropriate accurate entries and that more than one person can be "persons" in charge.

In Count 1 of the Second Superseding Indictment, Jho is charged with conspiring with others to fail to maintain an accurate Oil Record Book. Assuming, *arguendo*, that the sole duty for the maintenance of the Oil Record Book is with the Master or person in charge of the ship, dismissal of this particular object of the conspiracy is not warranted since other co-conspirators may have been in charge of the ship at the times in question. That may be a factual issue for trial, but is not something that this Court should consider for purposes of a motion to dismiss an indictment. *See United States v. Knox,* 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969) (on a motion to dismiss an indictment, the court is only to consider those objections which are capable of determination without the trial of the general issue; evidentiary or factual questions should not be determined at this stage). This Court cannot predict what evidence will be adduced at trial.

c). *Fair Notice: Conspiracy to Violate 18 U.S.C. § 1519*

Count 1 of the Second Superseding Indictment alleges, in part that Defendants conspired with others to "violate the laws of the United States as set forth below:

> C. *Obstruction:* To knowingly alter, conceal, cover up, falsify, or make a false entry in any record or document with the intent to impede, obstruct, or influence the investigation and proper administration of a matter within the jurisdiction of the U.S. Coast Guard and Department of Homeland Security and in relation to and in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

contemplation of a matter, namely, the U.S. Coast Guard's inspections to determine the *Pacific Ruby's* compliance with MARPOL and United States laws, in violation of Title 18, United States Code, section 1519."

*13 In his motion, Jho argues that a routine Coast Guard inspection is not an "investigation" within the ambit of 18 U.S.C. § 1519. Jho further argues that to knowingly obstruct an investigation, an investigation must be underway, he must know of the investigation, and then he must alter or destroy documents with the intent to obstruct that investigation. He asserts that there is no evidence nor allegation that he knew of a pending investigation. Jho further argues that Section 1519 is unconstitutional because it dispenses with a *mens rea* requirement.

Title 18, United States Code, Section 1519 provides, in part:
> "Whoever *knowingly* alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object *with the intent to impede, obstruct, or influence the investigation, or proper administration of any matter* within the jurisdiction of any department or agency of the United States ... shall be fined ... imprisoned ..." (emphasis added)

Jho's first argument that there must be a pending "investigation" before liability can attach is not persuasive. This Court agrees with the Government that Congress apparently included the terms "investigation or proper administration of any matter" to distinguish § 1519 from other obstruction of justice statutes. Limiting the reach of § 1519 to "investigations" ignores Congress' intent that the statute apply to obstructive conduct which relates to "the proper administration of any matter".

Congress apparently developed Section 1519 as a part of the Sarbanes-Oxley Act [FN7] to remedy the "loopholes" created by the "patchwork" of the other obstruction of justice statutes contained in Title 18:
> "Section 1519 is meant to apply broadly to any acts to destroy or fabricate physical evidence so long as they are done with the intent to obstruct, impede or influence the investigation of proper administration of any matter, and such matter is within the jurisdiction of an agency of the United States, or such acts done either in relation to *or in contemplation of such a matter or investigation.* This statute is specifically meant not to include any technical requirement, which some courts have read into other obstruction of justice statutes, to tie the obstructive conduct to a pending or imminent proceeding or matter. It is also sufficient that the act is done 'in contemplation' of or in relation to a matter or regulation. *It is also meant to do away with the distinctions, which some courts have read into obstruction statutes, between court proceedings, investigations, regulatory or administrative proceedings (whether formal or not), and less formal government inquiries, regardless of their title.* Destroying or falsifying documents to obstruct any of these types of matters or investigations, which in fact are proved to be within the jurisdiction of any federal agency are covered by this statute ... The intent of the provision is simple; people should not be destroying, altering, or falsifying documents to obstruct any government function."

*14 S. REP. No. 107-146, pp. 14-15 (2002) (emphasis added).

An excellent discussion of the legislative history and intent of Section 1519 can be found in *Anticipatory Obstruction of Justice: Pre-emptive Document Destruction Under the Sarbanes-Oxley Anti-Shredding Statute, 18 U.S.C. § 1519,* Cornell Law Review, September 2004 [FN8]. The article points out that Senator Patrick Leahy, then Chairman of the Committee on the Judiciary and drafter of the obstruction of justice provisions of the Sarbanes-Oxley bill, noted that the drafters intended the new obstruction statute to apply broadly and be bound only by an "intent" element and a "jurisdictional" element. 89 CORNELL L. REV. 1519, 1559. Before the final vote on the Sarbanes-Oxley bill, Leahy described the "intent" element of Section 1519 in detail:
> "This section would create a new 20 year felony which could be effectively used in a wide array of cases where a person destroys or creates evidence with the intent to obstruct an investigation or matter that is, as a factual matter, within the jurisdiction of any federal agency or any bankruptcy. It also covers acts either in contemplation of or in relation to such matters."

148 CONG. REC. S7, 418 (daily ed. July 26, 2002) (statement of Senator Leahy). Senator Leahy continued, stating:
> "[T]he intent required is the intent to obstruct, not some level about the agency processes of [sic] the precise nature of the agency of [sic] court's jurisdiction. This statute is specifically meant not

to include any technical requirement, which some courts have read into other obstruction of justice statutes, to tie the obstructive conduct to a pending or imminent proceeding or matter by intent or otherwise."
*Id.* at 519.

Later, Mr. Leahy described the difference between Section 1512 and Section 1519. 89 CORNELL LAW REV., at 1564. He emphasized that Section 1519 was drafted in order to avoid the requirement that the defendant know about the proceeding against him:

> "[Section] 1519 requires only proof of the defendant's intent to obstruct, impede, or influence and not any link to the defendant's knowledge about the nature of the government's jurisdiction ..."

*Id.* (Quoting letter from Patrick Leahy, U.S. Senator, to John Ashcroft, Attorney General, U.S. Dep't of Justice pp. 2-3 (Aug. 2, 2002) (on file with law review article author)).

Accordingly, the Court concludes that imposing a requirement that the matter develop into a formal investigation ignores the plain meaning of the statute and the legislative history. All that is required is proof that Jho knowingly made false entries in a document (the Oil Record Book) with the intent to impede, obstruct, or influence the proper administration of any matter within the jurisdiction of the United States Coast Guard. As noted in the legislative history, it is also sufficient that the act is done "in contemplation" of or in relation to a matter or regulation.

*15 The Second Superseding Indictment properly charges a conspiracy offense with the object of the conspiracy being a violation of Section 1519. Jho may be found guilty if a jury concludes and the facts establish beyond a reasonable doubt that he conspired to knowingly falsify the entries in the Oil Record Book with the specific intent to obstruct a matter within the jurisdiction of the Coast Guard. [FN9]

Request for Dismissal of Count 2 (18 U.S.C. § 1001) Title 18, United States Code § 1001 provides that "(a) ... whoever ... knowingly and willfully

> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry shall be fined under this title ...

Count 2 of the Second Superseding Indictment alleges that Jho, on or about September 15, 2005, in Port Neches, Texas, in the Eastern District of Texas:

> "made and used a false and fictitious Oil Record Book that stated that a discharge had been made on September 11, 2005 "with 15 ppm equipped" and created the overall false and misleading impression, through materially false and misleading entries and omissions, that the vessel was being operated properly, when Defendant Jho knew then and there that the fifteen (15) ppm equipment, namely the Oil Content Meter, was being flushed with fresh water, and was not sensing a true sample of the oily mixture, slops from bilges and bilge water that had accumulated in machinery spaces that were being discharged overboard.
> All in violation of Title 18, United States Code, sections 1001(a)(3) and (2)."

a). *General allegation of no legal duty to disclose*

Defendant argues that the conduct charged in Count 2 consists of concealment or omission. He cites several cases from other circuits which stand for the proposition that one cannot be guilty of concealing material facts within the jurisdiction of a federal agency if there is no duty to disclose those facts. The Government responds that while proof of a legal duty is not an element of 18 U.S.C. § 1001, Defendant was the person who was assigned the responsibility for the Oil Record Book and made the false entries and omissions in this matter. It is indisputable that Jho would be liable under Section 1001(a)(3) for making affirmatively false representations, i.e. the "materially false and misleading entries". The seminal question is whether, under Section 1001(a)(3), there must be a duty to disclose entries that were omitted from the Oil Record Book. What complicates matters is that the Government has indicted Jho under a false statement prong of Section 1001, however, the essence of the charge, at least as it pertains to the omissions, is that Jho tricked or caused to be tricked the pollution control equipment and did not enter a notation in the Oil Record Book that the system had failed. This does sound like concealment, even though it is charged under Section 1001(a)(3).

*16 One appellate court has held that Section 1001 encompasses two distinct offenses; the concealment of a material fact prohibited by § 1001(a)(1) and the making of a false statement prohibited under §

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1001(a)(2). *United States v. Shaw,* 150 F.App'x 863, 877 (10th Cir.2005), *cert. denied,* ___U.S.___, 126 S.Ct. 2039, 164 L.Ed. 783 (2006). Conviction under 1001(a)(1) requires proof that the defendant had a legal duty to disclose the fact concealed, while a conviction under 1001(a)(2) does not. *Id.* Unfortunately, in *Shaw,* the Tenth Circuit Court of Appeals did not specifically address the question of whether Section 1001(a)(3) requires a duty to disclose in the context of an omission. However, it should be noted that the language of 1001(a)(2) is virtually identical to that of 1001(a)(3) except that 1001(a)(3) involves a false writing or document. Further, proof of a legal duty to disclose is not an element of 18 U.S.C. § 1001(a)(3). *United States v. Puente,* 982 F.2d 156, 158 (5th Cir.1993), *cert. denied* 508 U.S. 92 (1993) (what must be proven is that there was a statement that is false and material, made with the requisite specific intent, and within the purview of government agency jurisdiction) (citing *United States v. Lichenstein,* 610 F.2d 1272, 1276 (5th Cir.1980), *cert. denied* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980)).

Even assuming that a duty to disclose is required, this Court finds that the Second Superseding Indictment properly alleged and charges that Jho tricked the pollution control equipment and failed to make the appropriate notation in the Oil Record Book. Whoever on board the ship was assigned the duty to make these specific notations had a duty to record details regarding the failure of the pollution control system. MARPOL, Annex I, Appendix III(F). The Government alleges that Jho was assigned responsibility for the Oil Record Book and actually made the false entries and omissions.

Although the duty to "maintain" the Oil Record Book falls upon the Master or "other person having charge of a ship", the duty to make appropriate entries concerning the discharge of bilge water which accumulates in machinery spaces falls upon the person in charge of the operation. *See* 33 C.F.R. § 151.25(d), (h), and (j). In addition, in Count 2, Jho is also charged with aiding and abetting this offense under 18 U.S.C. § 2. In testing the sufficiency of the indictment, a court must not pierce the proceedings and make a premature resolution of the merits of the allegations. *United States v. Cadillac Overall Supply Co.,* 568 F.2d 1078, 1083 (5th Cir.1978), *cert. denied* 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982) (citations omitted). Further, as stated *supra,* on a motion to dismiss an indictment, the court is only to consider those objections which are capable of determination without the trial of the general issue; evidentiary or factual questions should not be determined at this stage. *United States v. Knox,* 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969). Even assuming that only the Master or other person in charge of the ship had the duty to make these particular entries, this Court cannot look into the future to foresee whether the Government will introduce evidence that Jho aided and abetted the Master or other person in charge of the ship. Jho's motion to dismiss should be denied in this regard.

b). *Is the conduct alleged within the jurisdiction of the Coast Guard?*

*17 Jho argues that the facts relating to the alleged discharge in this matter bears some resemblance to the discharge in *United States v. Royal Caribbean Cruises, Ltd.,* [FN10] the Miami RCCL district court case discussed above. According to Jho, in the Miami RCCL case, the Government did not charge the unlawful discharge which occurred outside the twelve mile limit of the territorial sea as a substantive offense in the indictment and agreed that the discharge was not within U.S. waters. However, Jho alleges that the Government argued that the Section 1001 prosecution was appropriate because the Oil Record Book presented to the Coast Guard when the ship was in port included alleged false statements about activities that occurred within United States waters. Jho contends that the Government's argument in the Miami case is an admission that a false statement concerning the discharge of bilge does not come within the jurisdiction of Title 18, United States Code, § 1001, unless it concerns an event that occurred while the ship was in the territorial waters of the United States.

The Government argues that the fact that false entries and omissions in the Oil Record Book may pertain to discharges which may have take place outside of United States' waters has no bearing on the Government's jurisdiction to enforce its laws in port regarding false statements made to a United States agency. According to the Government, even if this case were about acts outside United States' territorial waters, longstanding precedent in this Circuit establish that the United States has jurisdiction over extraterritorial acts that have an impact on the United States.

Again, we look to the Miami district court's opinion in *United States v. Royal Caribbean Cruises, Ltd.,* for guidance on this issue. Royal Caribbean argued that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

since the Government had no authority to regulate conduct occurring outside the navigable waters of the United States, the Oil Record Book and its entries or lack thereof were not within the jurisdiction of the United States, much less the United States Coast Guard. *Id.* at 1362.

The Miami district court noted that the United States Supreme Court stated that jurisdiction within the meaning of section 1001 should not be narrowly or technically defined. *Id.* (Citing *United States v. Herring,* 916 F.2d 1543, 1547 (11th Cir.1990), *cert. denied* 500 U.S. 946, 111 S.Ct. 2248, 114 L.Ed.2d 488 (citing *United States v. Rogers,* 466 U.S. 475, 480, 104 S.Ct. 1942, 1946, 80 L.Ed.2d 492 (1984))). "Under the law as developed in the Eleventh Circuit, the fact that the alleged statement in a § 1001 case was not within the jurisdictional bounds of the United States is not fatal to the claim." *Id.* (Citing *United States v. Cox,* 696 F.2d 1294 (11th Cir.1983)) (upholding conviction for § 1001 violation where relevant documents were filled out in Guatemala). The Miami district court concluded that whether or not the United States has the authority to regulate the unauthorized discharge at the time it occurred did not bear on the court's inquiry as to whether the United States had jurisdiction to enforce its laws in an American port regarding the commission of false statements made to a United States agency performing its proper duties. *Id.* at 1364.

*18 In *Bryson v. United States* [FN11], the Supreme Court stated that the term " 'jurisdiction' should not be given a narrow or technical meaning for purposes of § 1001." The Coast Guard is authorized to conduct inspections of vessels to determine compliance with MARPOL, APPS, and related regulations, and is specifically authorized to examine a vessel's Oil Record Book pursuant to 33 C.F.R. § 151.23(a)(3) & (c). These inspections are regularly conducted activities of the Coast Guard. Defendant has cited no authority which suggests that the United States has no jurisdiction over false statements made in port concerning discharges made at sea which may be beyond the United States' jurisdiction to regulate. This Court agrees that "[t]o find the contrary would raise serious questions about the government's ability to enforce, as a matter of domestic law, false statements made in connection with such matters as bank fraud, immigration, and visa cases, where the statements at issue were made outside of the United States, perhaps acceptable or in the alternative unnecessary under the appropriate foreign regulatory scheme, but nonetheless illegal under United States law." *Royal Caribbean Cruises, Ltd.,* 11 F.Supp.2d at 1364.

In addition, an alternate basis for jurisdiction exists. Jurisdiction of the United States embraces offenses which have an effect within its sovereign territory, even though the acts constituting the offense occurred outside of the United States. *United States v. Williams,* 617 F.2d 1063, 1076 (5th Cir.1980) (en banc). Presentation of a false Oil Record Book to Coast Guard officials conducting an inspection pursuant to United States' laws and regulations certainly has an effect within the sovereign territory. *Royal Caribbean Cruises, Ltd.,* 11 F.Supp.2d at 1364.

c.) *Materiality*

Jho contends that MARPOL and the regulations do not require an entry that fresh water was used to flush the Oil Content Meter, particularly when the Second Superseding Indictment does not allege that bilge water exceeded the regulatory limit or that bilge water did not pass through the 15 ppm equipment before it was discharged. Defendant argues that the statements attributable to him are not material for purposes of Title 18, United States Code, Section 1001.

The Government responds that Counts 1 and 2 of the Second Superseding Indictment allege that Defendant affirmatively claimed that the discharges were made with 15 ppm equipment when he knew that the equipment was being "tricked" and not in operation as required. The Government also argues that, in the Oil Record Book, Defendant omitted entries which corresponded to system failures and exceptional discharges. The Government argues that these statements and omissions had a natural tendency to influence the exercise of the Coast Guard's authority.

Again, a violation of 18 U.S.C. section 1001 requires five elements: (1) a statement, that is (2) false (3) and material, (4) made with the requisite specific intent, and (5) within the purview of government agency jurisdiction. *United States v. Puente,* 982 F.2d 156, 158 (5th Cir.1993), *cert. denied* 508 U.S. 92 (1993). A material statement is one that has a natural tendency to influence, or one that is capable of affecting or influencing a government function. *Id.* at 159. Actual influence or reliance by a government agency is not required. *Id.* The statement may be material even if it is ignored or never read by the agency receiving the misstatement. *Id.* On one hand, Defendant appears to be arguing that the indictment

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

fails to sufficiently allege materiality, considering the Defendant's argument that he was under no duty to make an entry concerning the "tricking" of the equipment.

*19 In determining whether an indictment sufficiently alleges materiality, the Court looks to whether the statement or representation alleged to be false could conceivably have a tendency or capacity to influence or affect a government function; that is, whether it is potentially capable of being proved material by the government at trial. *United States v. McGough,* 510 F.2d 598, 602 (5th Cir.1975). If the facts alleged in the indictment warrant an inference that the false statement is material, the indictment if not fatally insufficient for its failure to allege materiality *haec verba. Id.*

The Coast Guard is specifically authorized to board a ship to determine whether the vessel has discharged any oil or oily mixtures on violation of MARPOL and the Coast Guard officers are entitled to inspect the Oil Record Book, Oil Content Meter, and other equipment on the vessel. *See* 33 C.F.R. § 151.23(a)(3) & (c). In its response, the Government contends that Defendant made entries in the Oil Record Book that discharges were made "with" or "through" 15 ppm equipment when they were not and that he used the MARPOL code of "15.1" which indicated that the discharge was made through the 15 ppm equipment, even though it was not. The Government contends that Defendant omitted specific information which concealed the condition of the *Pacific Ruby's* pollution monitoring system. The Government contends that Defendant was required to make an entry "F" in the Oil Record Book to denote the operational failure of the system when Defendant or others were "tricking" the equipment. The Government also alleges that Defendant failed to enter "G" in the Oil Record Book when there was an exceptional discharge and that he failed to do so. [FN12]

This Court disagrees with Jho's contention that there was no requirement to make the appropriate entry into the Oil Record Book when the system was rendered ineffective by being flushed with fresh water. As stated above, under the regulations, the person in charge of the operations has the duty to make an entry when the overboard discharges were made. Further, it is of no consequence that the Government allegedly cannot prove that any alleged discharge exceeded 15 ppm of oil. The regulations require that the oil pollution equipment be in operation. It is a material misrepresentation to falsely indicate that pollution equipment on an oil tanker is properly working when, in fact, it had been disabled. These alleged statements and omissions, in an Oil Record Book which the Coast Guard has the lawful authority to inspect, would have a natural tendency to influence, or be capable of affecting or influencing the Coast Guard's mission of investigating violations of MARPOL, APPS, and other federal regulations concerning pollution of the seas and waterways.

d). *Paperwork Reduction Act*

Jho argues that Count 2 should be dismissed based on the Government's non-compliance with the Paperwork Reduction Act (PRA). Jho notes that the Oil Record Book provided to United States Ships has an OMB (Office of Management and Budget) approval number but that the Oil Record Book provided to him in discovery does not contain such a number.

*20 The purpose of the Paperwork Reduction Act of 1980 is to minimize the federal paperwork burden for individuals, small businesses, state and local government, and other persons resulting from the collection of information by or for the Federal Government. *See* 44 U.S.C. § 3501(1). Approved information requests are assigned an OMB number. *See Holliday v. Comm'r,* T.C. Memo 2005- 240 (citing 44 U.S.C. § 3507(a)). Importantly, Section 3512 of the PRA provides that "no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this subchapter if ... the collection of information does not display a valid control number assigned by the Director in accordance with this subchapter." 44 U.S.C. § 3512(a). This section protects a person from penalties for failing to file information; it does not protect an individual who files information which is false. *United States v. Weiss,* 914 F.2d 1514, 1520 (2nd Cir.1990), *cert. denied* 502 U.S. 842, 112 S.Ct. 133, 116 L.Ed.2d 100 (1991); *United States v. Sasser,* 974 F.2d 1544, 1554-55 (10th Cir.1992), *cert denied,* 506 U.S. 1085, 113 S.Ct. 1063, 122 L.Ed.2d 368 (1995).

In addition, the PRA is inapplicable to information required to be provided by statute, as opposed to agency regulations. *United States v. Kerwin,* 945 F.2d 92 (5th Cir.1991) (per curiam) (the PRA does not apply to the statutory requirement that a taxpayer must file a tax return); *United States v. Hicks,* 947 F.2d 1356, 1359 (9th Cir.1991)("The PRA is aimed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

at reining in agency activity. When Congress sets forth an explicit statutory requirement and provides criminal penalties for failure to comply, that is another matter").

Accordingly, based upon the case law and the PRA, this Court agrees with the Government that the legal requirement that the *Pacific Ruby* maintain an Oil Record Book originated in MARPOL which was incorporated into United States law by APPS. For the reasons set forth above, because the maintenance of an Oil Record Book is required by federal law and regulations, the PRA does not apply in this case.

Dismissal of the Counts brought under 33 U.S.C. § 1908(a)

Counts 3--10 of the Second Superseding Indictment allege violations of the Act to Prevent Pollution from Ships, Title 33, United States Code, Section 1908(a). These counts allege that Defendant knowingly failed to maintain an Oil Record Book "by failing to disclose exceptional discharges in which overboard discharges of oily mixtures, slops from bilges and bilge water that accumulated in machinery spaces had been made without the use of a properly functioning Oil Water Separator and Oil Content Meter and falsely indicating the proper use of required pollution prevention equipment" on eight dates at locations within the Eastern District of Texas, in violation of Title 33, United States Code, Section 1908(a), Title 18, United States Code, Section 2, and Title 33, Code of Federal Regulations, Section 151.25. *See Second Superseding Indictment, Counts 3--10.* In his motion to dismiss, Defendant contends that these counts should be dismissed, arguing that he is not responsible for maintaining the Oil Record Book, the alleged false statements are not subject to criminal sanctions, and that the information allegedly omitted from the Oil Record Book was not a required entry.

a). *Responsibility for Maintaining the Oil Record Book*

*21 Defendant argues that the Government alleges only that Defendant was in charge of the engine room of the *Pacific Ruby*, not the entire ship. According to Defendant, under 33 C.F.R. § 151.25(h), responsibility for maintenance of the Oil Record Book rests with the master or other person in charge of the ship.

The Government answers that MARPOL and APPS clearly place the obligation to make entries in the Oil Record Book on the person in charge of the operation, in this case Defendant. Further, the Government responds that Defendant is also charged with violations of Title 18, United States Code, Section 2 (aiding and abetting).

Title 33, United States Code, Section 1908(a) provides that "[a] person who violates the MARPOL Protocol, ... this chapter, or the regulations issued thereunder commits a class D felony." 33 U.S.C. § 1908(a). Discharges from the machinery spaces must be recorded in the Oil Record Book and any "exceptional" discharge should also be recorded. 33 C.F.R. §§ 151.25(d) and (g). 33 C.F.R. § 151.25(h) further provides that entries concerning these discharges "shall be signed by the person or persons in charge of the operations concerned and each completed page shall be signed by the master or other person having charge of the ship." 33 C.F.R. § 151.25(h). The master or other person having charge of a ship required to keep an Oil Record Book is responsible for the maintenance of such record. 33 C.F.R. § 151.25(j).

There is little doubt that Defendant, if he did indeed have the overall responsibility for the operations relating to the discharges as the Second Superseding Indictment alleges, had the duty to "sign off" on the entry in the Oil Record Book pertaining to each required entry. Therefore, if Defendant failed to make a required entry, or intentionally made a false entry, in the Oil Record Book he would be in violation of 33 C.F.R. § 151.25, which, in turn, is a violation of 33 U.S.C. § 1908(a). On the other hand, if Defendant (because of his position on the ship), was not required to make the required entries in the Oil Record Book and did not make false entries, he arguably would not be liable for maintaining an inaccurate Oil Record Book because it is not alleged that he is the Master or otherwise in charge of the ship.

The problem which arises here is that it appears that the Government may have indicted Defendant for not "maintaining" an Oil Record Book. It is, of course, argued that he had no duty to maintain the Oil Record Book under 151.25(j)) specifically by failing to disclose exceptional discharges and falsely indicating the use of pollution equipment (which, relatedly, as the person in charge of the operation, he was required to do).

However, this is not an adequate ground for dismissal at this time. Counts 3-10 charge both Jho and OSG with failure to maintain the Oil Record Book on those specific occasions. As stated above,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

they are also charged with "aiding and abetting" under 18 U.S.C. § 2. Proof at trial could establish that Jho aided and abetted OSG (owner and operator of the *Pacific Ruby*) or others who were in charge of the ship. Counts 3-10 adequately charge and offense and this Court cannot now say, as a matter of law, that Jho cannot be found guilty of those offenses.

b). *Question of whether the false statements are subject to criminal penalties under APPS*

*22 Title 33, United States Code, Section 1908(a) provides in part:
> (a) Criminal penalties; payment for information leading to conviction
> A person who knowingly violates the MARPOL Protocol, Annex IV to the Antarctic Protocol, this chapter, or the regulations issued thereunder commits a class D felony.

Title 33, United States Code, Section 1908(b) then provides, in part:
> II. Civil penalties; separate violations; assessment notice; considerations affecting amount; payment for information leading to assessment of penalty

A person who is found by the Secretary, after notice and an opportunity for a hearing, to have
> (1) violated the MARPOL Protocol, Annex IV to the Antarctic Protocol, this chapter, or the regulations issued thereunder shall be liable to the United States for a civil penalty, not to exceed $25,000 for each violation; or
> (2) made a false, fictitious, or fraudulent statement or representation in any matter in which a statement or representation is required to be made to the Secretary under the MARPOL Protocol, Annex IV to the Antarctic Protocol, this chapter, or the regulations thereunder, shall be liable to the United States for a civil penalty, not to exceed 5000 for each statement or representation.

Defendant argues that the criminal provisions of APPS (33 U.S.C. § 1908(a)) fail to expressly criminalize the making of false statements and that false statements are expressly provided for in the civil section of APPS (33 U.S.C. § 1908(b)(2)). Defendant contends that the only fair reading of the statute is that false statements are not included among the acts subject to criminal sanctions under APPS.

The Government responds that the civil and criminal provisions of APPS can be read in harmony. According to the Government, Congress intended that the criminal sanctions of APPS be reserved for the worst types of violations--those committed knowingly. The Government notes that, in contrast, the civil penalty provisions, including the civil infraction for making a false statement, have no *mens rea* requirement and may be imposed without proof of intent. The Government concludes that the availability of the lesser penalties for a lesser offense in no way negates or repeals the availability of criminal; penalties when "knowing" conduct is at issue.

The starting point for interpreting a statute is an examination of the language of the statute itself. *United States v. Kay*, 359 F.3d 738, 742 (5th Cir.2004). When construing a criminal statute, we must follow the plain and unambiguous meaning of the statutory language. *Id.* A statute must, if possible, be construed in such a fashion that *every word* has operative effect. *Id.* (emphasis added). It is a cardinal principle of statutory construction that a statute ought to be construed so that no clause, sentence, or word shall be superfluous, void, or insignificant. *Kaltenbach v. Richards*, 464 F.3d 524, 528 (5th Cir.2006). When a statute's language is plain, the sole function of the courts, at least where the disposition required by the text is not absurd, is to enforce it according to its terms. *Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 518 (5th Cir.2004).

*23 This Court finds that 33 U.S.C. § 1908(a) unambiguously provides for criminal penalties for knowing violations of the MARPOL Protocol and the corresponding regulations, while Section 1908(b) unambiguously provides for civil penalties which may not have been committed with the requisite intent. Congress' intentional placement of the word "knowingly" in § 1908(a) indicates its desire to apply harsher sanctions to those who knowingly violate pollution laws. Defendant's reading of the statute ignores Congress' requirement of *mens rea* before imposing criminal sanctions. Knowingly made false statements can properly be prosecuted under § 1908(a).

c). *Was the information allegedly omitted from the Oil Record Book a required entry?*

Defendant argues that MARPOL does not require an entry concerning when the Oil Content Meter was allegedly being "tricked" that is, flushed with fresh water. This Court disagrees.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.